UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUSTAVO ESTRADA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CCDC SHERIFF DOUGLAS GILLESPIE, MUNOZ, VARNER, ALBRIGHT, TROST, HOLLIDAY, MARCHI, GRAVILOVICH, and JOHN DOE's.<br><br>　　　　Defendants. | Case No. 2:13-CV-00280-APG-PAL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>(Dkt. Nos. 4, 11) |

　　　　Defendants Gillespie and Munoz have jointly filed a Motion to Dismiss (Dkt. No. 4) Plaintiff Gustavo Estrada's Second Amended Complaint ("SAC"). Defendants Varner, Albright, Holliday, Marchi and Trost ("Corrections Defendants") have jointly filed a separate Motion to Dismiss (Dkt. No. 11). For the reasons set forth below, the court hereby grants the motions in part, and denies the motions in part.

I.　**BACKGROUND**

　　　　At the time Plaintiff filed his Complaint, he was a pretrial detainee. In Count 1, he appears to allege that around August 26, 2010, an escorting deputy, "John Doe #1," escorted Plaintiff and another inmate to a holding cell. While waiting for an elevator, Plaintiff and the other inmate discussed northern California. At the holding cell, John Doe #1 questioned Plaintiff about gang affiliation within earshot of other inmates. John Doe #1 relayed this conversation to gang investigators Gabriel Munoz and John Doe #2. Munoz and John Doe #2 removed Plaintiff from the holding cell and again questioned him about gang affiliation, asking Plaintiff whether he was a member of the Northerner gang. Plaintiff denied that he was a member. Munoz asked Plaintiff if he was fine in the cell he was in, and Plaintiff said he was. But when Plaintiff returned to the holding cell, he felt threatened by the other inmates, who he believed had grown suspicious due to the officers' repeated questionings.

1  When Plaintiff was taken to his housing unit, he noticed one of the inmates from the
2  holding cell staring "suspiciously" at him in a threatening manner.  Plaintiff informed Defendant
3  Unit Officer Gravilovich that Plaintiff felt threatened, and requested to be placed in protective
4  custody.  Officer Gravilovich placed Plaintiff in Gravilovich's office and reported the issue to the
5  gang unit investigators' office.  He then escorted Plaintiff to Officer Munoz's office.  Plaintiff
6  appears to allege that he told Munoz that Munoz and John Doe #2 had caused this danger by
7  questioning Plaintiff about gang affiliation within earshot of other inmates.  Munoz became angry
8  and "didn't even allow" Plaintiff to "explain the issue."

9  Plaintiff was taken to a general population unit (possibly the same unit as his original
10 housing unit), and not a protective custody unit as he had requested.  After a few weeks, two
11 inmates attacked Plaintiff because they incorrectly believed he was a Northerner gang member.

12 In Count 2, Plaintiff appears to allege that around September 19, 2010, he was again
13 attacked by two inmates, although the Complaint is unclear whether this was the same attack that
14 forms the basis for Count 1.  Plaintiff suffered injuries and requested they be photographed, but
15 they were not.  While defending himself during this altercation, Plaintiff seriously injured one
16 attacker and was placed in punitive segregation as a result.

17 In Count 3, Plaintiff alleges that while in punitive segregation as punishment for the
18 incident in Count 2, Plaintiff asked Officers Varner and Albright to classify Plaintiff as a
19 protective custody inmate, and told them his life was in danger.  This request was denied.
20 Plaintiff was attacked again on November 3, 2010 by an inmate who Plaintiff seems to allege
21 Officers Varner and Albright deliberately released from a cell for the purpose of assaulting
22 Plaintiff.

23 On September 5, 2012, Plaintiff filed suit in the Nevada state district court.  He named as
24 defendants "CCDC Sheriff Douglas Gillespie" ("Gillespie") (in his official and personal
25 capacities), Gabriel Munoz, Daniel Varner, Steven Albright, Nicholas Trost, John Holliday,
26 Claudio Marchi, Officer Gravilovich, and John Does.

27
28

Plaintiff pleads three counts under 42 U.S.C. § 1983, alleging violations of his rights to be free from cruel and unusual punishment. On February 20, 2013, Defendants removed the case to this Court. (Dkt. No. 1.)

## II. ANALYSIS

### A. Legal Standard — Motion to Dismiss

A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Claims Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the U.S. Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393– 94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and must [2] show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### C. Cruel and Unusual Punishment--Conditions of Confinement

"Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment. . . . Because pretrial detainees rights under the Fourteenth Amendment are comparable to prisoner's rights under the Eighth Amendment, however, we apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241–44 (9th Cir. 2010).

"To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' . . . occurring through 'deliberate indifference' by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347(1981); *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). Thus, a prisoner who challenges his conditions of confinement must make two showings. *Johnson v.*

*Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). First, the plaintiff must show the alleged deprivation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Id.* Second, the plaintiff must show that the prison official acted with a "sufficiently culpable state of mind," i.e., the official acted with deliberate indifference. *Id.*; *Keenan*, 83 F.3d at 1089.

With respect to whether the deprivation was sufficiently serious, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Somers v. Thurman*, 109 F.3d 614, 623 (9th Cir. 1997) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson*, 217 F.3d at 731. "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. The more basic the need, the shorter the time it can be withheld." *Id.* (internal quotation marks and citation omitted).

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The state of mind for deliberate indifference is subjective recklessness." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). Deliberate indifference requires a two-part inquiry. "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety. . . . Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 844 (1994)).

**D.   Motions to Dismiss (Dkt. No. 4, Dkt. No. 11)**

    **1.   Failure to Timely Serve (Dkt. No. 4)**

For the reasons Defendants have conceded in their Replies (Dkt. No. 10 and 14), this court finds good cause for Plaintiff's untimely service. Accordingly, this portion of Defendants' motion to dismiss is denied.

### 2. Individual Defendants in Their Official Capacities

Individuals can be defendants in their official and personal capacities. Suing an individual in his official capacity is the equivalent of suing the entity of which he is a part. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Thus, as Defendants point out, dismissal of an official is proper where a plaintiff names as defendants both the official in his official capacity and the entity. *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).

Contrary to Defendants' argument, Plaintiff has not named as a defendant any local government entity. Defendants interpret Plaintiff's Complaint as naming CCDC as a defendant, and Plaintiff apparently agrees. (*See* Dkt. No. 9 at 2–3.) However, the Complaint on its face names "CCDC Sheriff Gillespie" as a single defendant. Nothing in the Complaint suggests Plaintiff intended to name CCDC as a separate defendant. Further, CCDC is a building and not a legal entity, so it is not a proper defendant. Nevada law delegates final policymaking authority for the operation of CCDC to the commanding officer and policymaker of the Las Vegas Metropolitan Police Department ("LVMPD"). *See* NRS 280.280; NRS 280.284; *Bruttomesso v. Las Vegas Metropolitan Police Department*, 95 Nev. 151, 153 (1979). Thus, the legal entity responsible for CCDC is LVMPD (which is not named in this suit), and the official with final policymaking authority over CCDC is Sheriff Gillespie (who is named in this suit). However, Plaintiff also has named in their official capacities other LVMPD officers who were personally involved with the alleged conduct. Suing these other officers in their official capacities obviates the need to name Sheriff Gillespie in his official capacity because both of these options are the equivalent of suing LVMPD. Alternatively, Plaintiff may elect to name LVMPD as a defendant in his § 1983 action. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

Whether Plaintiff desires to name as a defendant either LVMPD or individual officers in their official capacities, Plaintiff must allege that:

> (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged

>action constituted official policy; or (4) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate.

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks and citations omitted). "Generally, a municipality is liable under *Monell* only if a municipal policy or custom was the 'moving force' behind the constitutional violation. . . . In other words, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d, 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Thus, to state a claim against these Defendants, Plaintiff must allege that an LVMPD policy or custom was the "moving force" behind the alleged constitutional violations. *Villegas*, 541 F.3d at 957. Plaintiff need not identify the precise policy or custom at issue, which would be difficult for an inmate to do without detailed records of LVMPD's policies. Rather, Plaintiff's allegations must be sufficient to render plausible that LVMPD's policy, custom, or practice caused LVMPD to be deliberately indifferent to Plaintiff's serious personal safety needs.

Because the parties are unclear as to whom Plaintiff intended to name as defendants, the Court dismisses with leave to amend all claims against individuals in their official capacity, and instructs Plaintiff to name as defendants *either* the individuals in their official capacities *or* LVMPD, if the facts support such a claim.

### 3. Individual Defendants in Their Personal Capacities

Government officials may be sued in their personal capacity under § 1983. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 165 (1985). However, to be liable under § 1983, a defendant must have personally participated in the alleged misconduct. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, a supervisor cannot be liable merely because a subordinate engaged in illegal behavior. Rather, "[a] supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor*, 880 F.2d at 1045).

////

### a.  Sheriff Gillespie (Dkt. No. 4)

Plaintiff has not alleged that Gillespie participated in or directed the alleged violations, or that Gillespie knew of the violations and failed to act to prevent them. *See Maxwell*, 708 F.3d at 1086. Based on the mere identification of Gillespie as the government official ultimately in charge of all operations at CCDC, it is possible, but not plausible, that Gillespie personally participated in the alleged violations as required for liability under § 1983. *Iqbal*, 556 U.S. at 679. Thus, the Court dismisses the personal-capacity claims against Gillespie.[1] However, the Court grants Plaintiff leave to file an amended complaint with additional factual allegations against Gillespie, should such facts exist.

### b.  Corrections Defendants (Dkt. No. 11)

Plaintiff has stated a claim against Defendants Varner and Albright in Count 3, but not in Counts 1 or 2. Plaintiff has not alleged that Officers Varner and Albright participated in or directed the alleged violations in Counts 1 or 2, or that they knew of the violations and failed to act to prevent them. In Count 3, Plaintiff appears to allege that Officers Varner and Albright refused his request for protective custody classification, and released another inmate from that inmate's cell for the purpose of attacking Plaintiff in retaliation for his request. These allegations, if true, are sufficient to support a claim against Defendants Varner and Albright. Accordingly, Plaintiff's claims against Varner and Albright in Counts 1 and 2 are dismissed, and his claims in Count 3 against Varner and Albright in their personal-capacities survive.

As to the remaining Corrections Defendants—Holliday, Marchi, and Trost—Plaintiff fails to plead under any count that they participated in or directed the alleged violations, or that they knew of the violations and failed to act to prevent them. *See Maxwell*, 708 F.3d at 1086. Plaintiff has not alleged that these remaining Corrections Defendants took any part in these violations. Thus, the Court dismisses the personal-capacity claims against Holliday, Marchi, and Trost. However, the Court grants Plaintiff leave to amend his complaint with additional factual allegations against Holliday, Marchi and Trost, should such facts exist.

---

[1] The Court need not determine now whether Gillespie enjoys qualified immunity.

### 4. Fifth Amendment Claims

As explained above, "[c]laims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause.... Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241–44 (9th Cir. 2010). The Eighth Amendment protects against cruel and unusual punishment. Plaintiff erroneously couched his claims under the Fifth Amendment. The Fifth Amendment, which protects citizens' rights to federal due process, is inapplicable to Plaintiff's claims, which allege only cruel and unusual punishment. Accordingly, claims based on Plaintiff's Fifth Amendment rights are dismissed.

Based on the foregoing, the Court hereby ORDERS:

1. All claims against individuals in their official capacities are DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to re-plead these claims against either LVMPD or the appropriate officers in their official capacities, if facts support such a claim.

2. Gillespie and Munoz's motion to dismiss (Dkt. No. 4) is GRANTED IN PART and DENIED IN PART. The official-capacity claims against Gillespie and Munoz are DISMISSED WITHOUT PREJUDICE. The personal-capacity claims against Gillespie are DISMISSED WITHOUT PREJUDICE. All claims under the Fifth Amendment are DISMISSED WITH PREJUDICE. All other claims survive.

3. Varner, Albright, Holliday, Marchi, and Trost's motion to dismiss (Dkt. No. 11) is GRANTED IN PART and DENIED IN PART. All claims under the Fifth Amendment are DISMISSED WITH PREJUDICE. The official-capacity claims against Varner, Albright, Holliday, Marchi, and Trost are DISMISSED WITHOUT

PREJUDICE. The personal-capacity claims against Holliday, Marchi and Trost are DISMISSED WITHOUT PREJUDICE. The personal-capacity claims against Varner and Albright in Counts 1 and 2 are DISMISSED WITHOUT PREJUDICE. The personal-capacity claims against Varner and Albright in Count 3 survive.

4. Plaintiff is granted leave to file an amended complaint. He may re-plead his personal-capacity claims against Gillespie, Holliday, Marchi and Trost if sufficient facts exist. If Plaintiff re-pleads these claims, he must allege facts that support a reasonable inference that each defendant personally participated in the alleged constitutional violations, directed the violations, or knew of the violations and failed to prevent or to stop them. Plaintiff may re-plead his official-capacity claims against the appropriate individual officers, or alternatively, plead these claims against LVMPD, if sufficient facts exist.

5. Within seven days of the entry of this Order, Defendants shall inform the Court whether Plaintiff is still in custody. If Plaintiff is in custody, Defendants shall serve this Order on Plaintiff and, within 14 days of the entry of this Order, file proof of service with the Court. If Plaintiff is not in custody, the Court will serve this order via First Class Mail at the address on file with the Court.

6. If Plaintiff is not in custody, he must file with the court written notification of his current address within 30 days of the date of this Order. Should Plaintiff fail to do so, the Court will dismiss this case without prejudice. *See* Local Rule of Special Proceedings and Appeals ("LSR") 2-2 ("The plaintiff shall immediately file with the

Court written notification of any change in address. . . . Failure to comply with this Rule may result in dismissal of the action[.]").[3]

DATED this 14th day of February, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[3] The Court's prior attempt to serve Plaintiff at the following address in October 2013 failed:

>Gustavo C. Estrada #60657
>High Desert State Prison
>P.O. Box 650
>Indian Springs, NV 89070-0650

(Dkt. No. 30, mail returned as undeliverable.)