**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

GUSTAVO C. ESTRADA,

    Plaintiff,

v.

DOUGLAS GILLESPIE, *et al.*,

    Defendants.

Case No. 2:13-CV-00280-APG-PAL

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

(Dkt. #43, #50)

    Plaintiff Gustavo Estrada filed this lawsuit claiming various individuals at the Clark County Detention Center ("CCDC") violated his constitutional rights by knowingly housing him under conditions that subjected him to attack by other inmates. Estrada initially was housed in the general population. He contends that defendants refused to move him into protective custody despite his repeated requests and that he subsequently was attacked by other inmates.

    The parties cross-move for summary judgment on Estrada's remaining claims against defendants Gabriel Munoz, Daniel Varner, and Steven Albright.[1] These defendants contend they were not deliberately indifferent to a risk of harm to Estrada. They claim they investigated his situation after each incident and made appropriate decisions regarding Estrada's housing classification. Alternatively, defendants assert they are entitled to qualified immunity. Estrada responds that he repeatedly requested protective custody, but defendants denied those requests, resulting in him being attacked by other inmates.

**I. BACKGROUND**

    Estrada was arrested on July 19, 2010. (Dkt. #43-1 at 2.) At intake at CCDC, Estrada indicated he had been in jail before for a non-violent felony. (*Id.* at 24.) He denied he had any

---

[1] Estrada also filed suit against Sheriff Douglas Gillespie and officers Gravolovich, Trost, Holliday, and Marchi. I previously dismissed Estrada's claims against these defendants. (Dkt. #34, 58.)

1  tattoos, had ever been victimized while in custody, had ever been associated with a gang, or had
2  any enemies in custody. (*Id.*)  He was placed in the general population in module 5A. (*Id.* at 27.)
3        On August 26, 2010, Estrada was being escorted to court by officer Razo. (Dkt. #49 at 3.)
4  According to Estrada, he and another inmate, McGervey, were talking about northern California.
5  (*Id.*; Dkt. #43-2 at 3.)  Estrada avers that Razo began questioning him about gang affiliations in
6  front of other inmates. (*Id.*)  Officer Razo later contacted defendant Munoz and stated that he
7  overheard Estrada talking with another inmate about gang politics and claiming to have been
8  incarcerated at Pelican Bay. (Dkt. #43-2 at 3.)  Razo contacted Munoz because Munoz was a gang
9  unit investigator at CCDC. (*Id.* at 2.)  As a gang unit investigator, Munoz's duties included
10 evaluating the classification of inmates within CCDC. (*Id.* at 3.)

11       In response to this information, Munoz interviewed Estrada away from where other
12 inmates could hear their conversation. (*Id.*; Dkt. #49 at 3.)  According to Estrada, he told Munoz
13 he was not a gang member. (Dkt. #49 at 3-4.)  According to Munoz, Estrada admitted he was
14 telling lies to McGervey. (Dkt. #43-2 at 3.)  Munoz told Estrada that if he openly made such
15 statements, he potentially was endangering himself with the other inmates. (*Id.*)  Estrada indicated
16 he felt comfortable returning to the general population in module 5A. (*Id.*; Dkt. #49 at 4.)
17 Following this interview, Munoz contacted the California Department of Corrections and
18 confirmed that Estrada had never been incarcerated at Pelican Bay.[2] (Dkt. #43-2 at 4.)

19       As Estrada was returning to his module, he noticed one of the other inmates staring at him
20 in a threatening manner. (Dkt. #49 at 4.)  He told defendant officer Gravolovich that he felt
21 threatened and wanted to be moved to protective custody. (Dkt. #43-2 at 4; Dkt. #49 at 4, 38, 41.)
22 Gravolovich contacted Munoz, who again interviewed Estrada. (Dkt. #43-2 at 4; Dkt. #49 at 4.)
23 According to Munoz, Estrada denied he was fearful, but Munoz decided it was appropriate to

---

[2] Munoz testified during a trial that the California Department of Corrections did not give him any information regarding Estrada's classification, but Munoz avers in his affidavit that the California Department of Corrections told him Estrada was housed in the general population. (Dkt. #49 at 60, 72.) Defendants object to consideration of the trial transcript because it was not produced in discovery.  I need not resolve that objection because even considering this evidence, defendants are entitled to summary judgment.

move him to the general population in a different module, module 7B. (Dkt. #43-2 at 5; Dkt. #43-1 at 27.) According to Estrada, he requested protective custody, but Munoz decided to keep him in the general population. (Dkt. #49 at 4-5.)

Estrada got into a fight with two other inmates on September 19, 2010. (Dkt. #43-2 at 5.) According to Estrada, the other two inmates attacked him because Razo's questioning inferred he was a gang member. (Dkt. #49 at 5.) Munoz was assigned to investigate. (Dkt. #43-2 at 5.) As part of his investigation, he interviewed several inmates and came to the conclusion that Estrada was the aggressor in the fight. (*Id.* at 5, 16, 18-19.) Munoz also investigated whether each inmate in the altercation had any gang affiliations. (*Id.* at 5.) He did not discover any. (*Id.*) Munoz's investigative report was forwarded to the Conduct Adjustment Board ("CAB") for CCDC and to the Clark County District Attorney for criminal prosecution of Estrada. (*Id.*)

The CAB, of which defendants Varner and Albright are members, held a hearing on the September 19th incident. (*Id.* at 23, 27.) During the hearing, Estrada indicated he was held in the special needs yard while incarcerated in California and stated there would be trouble if he was not housed properly. (*Id.* at 5, 23, 27; Dkt. #49 at 93.) Varner and Albright contacted Munoz regarding Estrada's statement that he previously had been housed in protective custody in California. (Dkt. #43-5 at 5, 23, 27.) Munoz told them that he had contacted the California Department of Corrections and confirmed that Estrada was housed in the general population and had no known gang affiliations. (*Id.*) Estrada avers that while incarcerated in California, he was housed in a special needs yard, which is a form of protective custody.[3] (Dkt. #49 at 6.)

The CAB found Estrada guilty of fighting. (Dkt. #43-2 at 5, 23, 27.) As a result, Estrada was confined to a single cell in the disciplinary housing unit for 60 days. (*Id.*) The disciplinary housing unit is similar to maximum custody because inmates are housed alone and have restricted contact with others. (*Id.* at 6, 23, 27.) Estrada filed a grievance appealing the CAB's decision. (*Id.* at 32.) Estrada claimed that he made multiple requests to different officers to be placed in

---

[3] Defendants object to this evidence, claiming it was not produced in discovery. I need not resolve this objection because even considering this evidence, defendants are entitled to summary judgment.

protective custody but was ignored each time. (*Id.*) Estrada asserted that he was placed into the general population even though he was housed in protective custody in California. (*Id.*) He also asserted Munoz knew about his prior custody status because Munoz contacted the California prison. (*Id.*) The grievance was denied. (*Id.*)

On November 3, 2010, Estrada got into a fight with another inmate in disciplinary housing while the two were out on free time. (*Id.* at 42.) Estrada contends the other inmate was deliberately released from a cell for the purpose of attacking Estrada in retaliation for his requests for protective custody. (Dkt. #49 at 5-6.) This incident was referred to the CAB. (Dkt. #43-2 at 42.) Estrada filed a grievance claiming that he was out of his cell on free time when another inmate, who was a known gang member, was released from a cell and attacked Estrada. (*Id.* at 48.) Estrada claimed that he should have been in protective custody. (*Id.*) The grievance was denied as untimely. (*Id.*)

On November 6, 2010, another officer advised Munoz that Estrada was claiming to be a dropout of the gang the Border Boys and that he was claiming he was supposed to be in protective custody as a result of a plea bargain. (*Id.* at 6.) Munoz determined that because Estrada already was in the disciplinary unit where he was housed alone and had limited contact with others, no further classification was needed. (*Id.*)

On November 8, 2010, Varner and Albright, as members of the CAB, held a hearing on Estrada's conduct during the November 3rd fight. (*Id.* at 24, 27.) At that hearing, Estrada again requested to be put into protective custody. (*Id.* at 24, 28; Dkt. #49 at 95.) The CAB found Estrada guilty of fighting. (Dkt. #43-2 at 24.) As a result, Estrada's time in disciplinary housing was extended. (*Id.* at 6, 24, 27.) Because Estrada remained in disciplinary housing, Munoz determined no re-classification was needed. (*Id.* at 6.) Estrada was to go into maximum custody after he completed his time in disciplinary housing, but he was transferred to Nevada State Prison before his term of disciplinary housing expired. (*Id.* at 24.)

1    Estrada was criminally prosecuted for the September 19, 2010 incident. (*Id.* at 34.)  He
2 was found guilty in February 2011 of battery by a prisoner without use of a deadly weapon. (*Id.* at
3 35, 38.)

4    Estrada filed suit in this court against various defendants, including Munoz, Varner, and
5 Albright.  Following my ruling on a motion to dismiss, Estrada's only remaining claims are: (1)
6 that Munoz did not move him to protective custody when he requested it on August 26, 2010
7 (count one); (2) that on September 19, 2010 he was attacked after Munoz failed to move him to
8 protective custody (count two); and (3) that Munoz, Varner, and Albright denied his request to be
9 moved to protective custody, resulting in him being attacked on November 3 (count three).
10 Estrada also alleges that in connection with the November 3rd incident, Varner and Albright
11 deliberately let the other inmate out of a cell to attack Estrada in retaliation for his requests for
12 protective custody.

13    Munoz, Varner, and Albright move for summary judgment.  As to count one, defendants
14 argue that Munoz was not deliberately indifferent to a known risk to Estrada because Munoz
15 moved Estrada to a different module.  As to count two, defendants argue a jury found beyond a
16 reasonable doubt that Estrada was the aggressor in the September 19th incident, and even
17 assuming Estrada was the victim, there is no evidence Munoz knew or should have known that
18 Estrada would be attacked.  As to count three, defendants argue none of them was deliberately
19 indifferent to a known risk to Estrada prior to the November 3rd fight because Estrada already
20 was in disciplinary housing, which is akin to protective custody with limited interaction between
21 inmates.  Finally, defendants argue they are entitled to qualified immunity.

22    Estrada opposes this motion and cross-moves for summary judgment.  Estrada contends
23 that he repeatedly requested protective custody but was denied.  Estrada also argues that he was in
24 protective custody in California because he was housed in the special needs yard, which is a form
25 of protective custody.  Estrada also argues that Varner and Albright do not dispute that an inmate
26 was released from a cell to attack him during the November 3rd incident.  He therefore seeks
27 partial summary judgment on this issue.  Estrada also argues defendants are not entitled to
28

qualified immunity because the law was clearly established that he has a right to be free from assaults by other inmates.

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

"[P]rison officials have a duty . . . to protect inmates from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted). A prison official's failure to protect one inmate from attacks by other inmates may rise to the level of a constitutional violation if: "(1) the deprivation alleged is objectively, sufficiently serious and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (internal quotation marks and citation omitted). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the

inference." *Farmer*, 511 U.S. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence. *See id.* at 842. The very obviousness of the risk may be sufficient to establish knowledge. *Id.*

**A. Counts One and Two - Munoz**

Counts one and two allege that Munoz failed to grant Estrada's request to be placed into protective custody on August 26, 2010 and that led to Estrada being attacked on September 19, 2010. Taking Estrada's version as true, he requested protective custody on August 26, 2010 because an inmate in his module was looking at him in a threatening manner. Munoz did not place him in protective custody. Instead, Munoz moved him into the general population of a different module. Less than a month later, Estrada was attacked by two inmates.[4]

Even accepting these facts as true, Estrada has failed to present evidence raising an issue of fact that Munoz was aware of and disregarded an excessive risk to Estrada's safety. Munoz was aware that an inmate in module 5A gave Estrada a threatening look after Razo discussed Estrada's potential gang affiliations within earshot of inmates in module 5A. Based on this information, Munoz moved Estrada to another module. Estrada has presented no evidence that Munoz knew that placing Estrada in the general population of a different module would expose Munoz to attack from other inmates in the new module. He also has not presented evidence that Munoz was aware of any threats made to Estrada after he was moved to module 7B. I therefore grant defendants' motion as to counts one and two.

**B. Count Three - Munoz, Varner, and Albright**

Count three alleges that after the September 19th incident, Estrada again requested protective custody but instead was placed in disciplinary housing where he was attacked by another inmate on November 3, 2010. As I stated in a prior order, Estrada also appears to allege

---

[4] Defendants note that a jury found Estrada guilty of battery by a prisoner without use of a deadly weapon in relation to the September 19th incident. Defendants argue Estrada cannot assert he acted in self-defense because that would imply his conviction on this charge is invalid. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). I need not reach this issue because even assuming Estrada acted in self-defense, he has not presented evidence raising an issue of fact that Munoz was deliberately indifferent to an excessive risk to his safety.

1  that Varner and Albright deliberately let the other inmate out of a cell for the purpose of
2  assaulting Estrada in retaliation for his request for protective custody. (Dkt. #34 at 8.)

### 1. Deliberate indifference to the threat of attack on Estrada

Viewing the evidence in the light most favorable to Estrada on defendants' motion, Estrada has not presented evidence raising an issue of fact that defendants were deliberately indifferent to an excessive risk to his safety by placing him in disciplinary housing as opposed to protective custody.  Following the September 19th incident, Estrada was placed in disciplinary housing, which limited his interaction with other inmates.  Estrada has not presented evidence that defendants knew that Estrada was in danger of being assaulted even given this limited contact with other inmates.  Estrada has not presented any evidence that defendants knew of any threats to Estrada while he was confined in disciplinary housing or that they had information that the other inmate involved in the November 3rd fight in particular posed a risk to Estrada.  I therefore grant defendants' motion for summary judgment on this portion of count three.

### 2. Deliberate release of the other inmate with the purpose of attacking Estrada

Estrada moves for partial summary judgment on the second portion of count three, arguing that Varner and Albright did not dispute his allegation that they deliberately released the other inmate from the cell for the purpose of attacking Estrada.  Viewing the evidence in the light most favorable to defendants on Estrada's motion, Estrada has not presented any evidence that either Varner or Albright were the individuals who released the other inmate from the cell.  Estrada relies only on the allegations in his complaint, which do not identify who released the inmate from the cell, and on my prior order, in which I stated that it "seem[ed]" as if Estrada was alleging Varner and Albright released the other inmate. (Dkt. #34 at 2, 8; *see also* Dkt. #1 at 14 (alleging he was "attacked once again on this date by a[n] inmate that was deliberate[ly] let out [of] his cell for the purpose of [Estrada] being assaulted by the officers['] deliberate wrong doings").)  Estrada's non-specific allegation in the complaint does not establish that Estrada is entitled to judgment as a matter of law.  Accordingly, I deny Estrada's motion.

Defendants did not move for summary judgment on this aspect of count three. Accordingly, this portion of count three remains pending.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Dkt. #43) is GRANTED.  Defendants are entitled to summary judgment on counts one, two, and the portion of count three that alleges defendants were deliberately indifferent to a risk that Estrada would be attacked by other inmates if not placed in protective custody.  I do not grant summary judgment on the portion of count three that alleges defendants Varner and Albright deliberately released another inmate from a cell for the purpose of attacking Estrada because defendants did not move for summary judgment on that claim.

IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment (Dkt. #50) is DENIED.

DATED this 12th day of May, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE